IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BAYCO PRODUCTS, INC.,           §
                                §
                Plaintiff,      §
                                § Civil Action No. 3:10-CV-1820-D
VS.                             §
                                §
STEVEN LYNCH, et al.,           §
                                §
                Defendants.     §

MEMORANDUM OPINION
AND ORDER

In this lawsuit brought by a company after its former National
Sales Manager began working for a competitor who later developed
and marketed a competing product, defendants' motion to dismiss
presents the question whether plaintiff has pleaded sufficient
facts to state plausible claims on which relief can be granted.
Concluding that it has not, the court grants defendants' motion,
but it also grants plaintiff leave to replead.

I

This is an action by plaintiff Bayco Products, Inc. ("Bayco")
against defendants Steven Lynch ("Lynch") and The Designers Edge,
Inc. ("Designers")[1] alleging claims for trade secret
misappropriation, breach of contract, tortious interference with
contract, trade dress infringement, and unfair competition. Bayco

---

[1]According to a notice filed on April 27, 2011, Designers has
changed its corporate name to TDE, Inc. For clarity, and based on
the name under which it has been sued, the court will refer to
Designers in this memorandum opinion and order under its former
corporate name.

hired Lynch in 2006 as National Sales Manager for the Consumer Division.[2] Lynch signed an Employee's Acknowledgment of Employer's Rights in Work Product ("Agreement"). The Agreement acknowledged that Bayco "owns all rights in and to the Work Product," where "Work Product" is defined to include, "[a]ll intellectual property rights, including all trade secrets." Compl. Ex. A at 3. The Agreement also provided: "During the course of the Employee's employment or engagement and afterwards, the Employee agrees not to use or disclose any of the Owner's trade secrets except as necessary to perform its duties for the Owner." *Id*. The Agreement acknowledged, however, that "[t]hese restrictions do not apply to any information generally available to the public or properly obtained from an independent source." *Id*.

While employed at Bayco, Lynch participated in the development of a hand held lighting wand product called the "Bayco Wand." Bayco alleges that the Bayco Wand has been highly successful in the marketplace and that these features have acquired secondary meaning as trade dress due to widespread national sales in the consumer, public safety, and industrial markets; significant promotional expenditures via print media, national trade shows, industry

---

[2]In deciding this Fed. R. Civ. P. 12(b)(6) motion, the court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

meetings, and sales calls; and industry recognition.

Lynch took part in high-level confidential meetings covering competition strategy for the Bayco Wand during the course of his employment, where sensitive topics such as packaging, sourcing, pricing, and approaches to consumers were discussed. Lynch's employment was subsequently terminated on September 20, 2008, and he went to work for Designers, a Bayco competitor. Since then, Designers has also designed and marketed a lighting wand product ("Designers Wand"), which Bayco alleges to be a "knock-off" of the Bayco Wand, developed by using Lynch's knowledge of Bayco's trade secrets.

Lynch and Designers move to dismiss under Fed. R. Civ. P. 12(b)(6), contending that Bayco has failed to state any claims on which relief can be granted. Bayco opposes the motion.

II

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While "the pleadings standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "The court does not, however, 'rely upon

conclusional allegations or legal conclusions that are disguised as factual allegations.'" *Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *14 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (quoting *Jeanmarie v. United States*, 242 F.3d 600, 602-03 (5th Cir. 2001)).

In deciding a Rule 12(b)(6) motion, "[t]he 'court "accepts all well-pleaded facts as true viewing them in the light most favorable to the plaintiff."'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive the motion, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.; see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged——but it has not 'shown'——'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Rule 8(a)(2)) (alteration omitted). "Nor does a complaint suffice if it tenders 'naked

assertions devoid of further factual enhancement.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950.

## III

The court turns first to Bayco's claim for trade secret misappropriation.

## A

To establish this claim, Texas law requires that Bayco prove that "(1) a trade secret existed; (2) the trade secret was acquired through a breach of a confidential relationship or was discovered by improper means; (3) the defendant used the trade secret without the plaintiff's authorization; and (4) the plaintiff suffered damages as a result." *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 366-67 (Tex. App. 2009, pet. denied) (citing *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex. App. 2004, pet. denied)). The parties dispute whether Bayco has adequately pleaded the requirements of the first and third elements.

## B

Bayco maintains that there is a protectable trade secret. It alleges in its complaint that it has highly valuable proprietary information in the form of "know-how with respect to the design and marketing of the Bayco Wand, as well as other Bayco products,"

which Bayco uses to gain a competitive edge.  Compl. 5.  Elsewhere
in the complaint, Bayco refers to "high level, confidential
strategy meetings at Bayco," where Lynch, as participant, had
access to information about "sensitive competitive issues, such as
packaging, sourcing, pricing, approaches to consumers, and other
strategies regarding the Bayco Wand."  *Id.* at 4.  Defendants
respond that the "know-how" alleged is not a trade secret,
especially because the definition of "trade secret" in the
Agreement does not mention "know-how," and information regarding
"packaging" is designed to be publicly known.

Under Texas common law, a trade secret is "any formula,
pattern, device or compilation of information which is used in
one's business and presents an opportunity to obtain an advantage
over competitors who do not know or use it."  *In re Bass*, 113
S.W.3d 735, 739 (Tex. 2003).  This definition is consistent with
the one contained in the Agreement, which provides that a trade
secret is "[a] type of intangible property that generally consists
of valuable, secret information or ideas that the Owner collects or
uses in order to keep its competitive edge[.]"  Compl. Ex. A at 2.[3]

_____

[3]The complete definition of "trade secret" contained in the
Agreement is:

> A type of intangible property that generally
> consists of valuable, secret information or
> ideas that the Owner collects or uses in order
> to keep its competitive edge, including
> confidential information supplied to it by its
> customers, clients, vendors, or agents.  This

To determine the existence of such secret information, the Supreme

Court of Texas weighs six factors from the Restatement of Torts:

> (1) the extent to which the information is
> known outside of his business; (2) the extent
> to which it is known by employees and others
> involved in his business; (3) the extent of
> the measures taken by him to guard the secrecy
> of the information; (4) the value of the
> information to him and to his competitors; (5)
> the amount of effort or money expended by him
> in developing the information; (6) the ease or
> difficulty with which the information could be
> properly acquired or duplicated by others.

*Bass*, 113 S.W.3d at 739 (citing Restatement of Torts § 757 cmt. b

(1939); Restatement (Third) of Unfair Competition § 39, reporter's

n. cmt. d). As noted in *Trilogy Software*, "[b]efore information

can be a 'trade secret,' there must be a substantial element of

secrecy." *Trilogy Software*, 143 S.W.3d at 467. "[I]nformation

generally known and readily available is not protectable.

Consistent with this concept of secrecy, a former employee may use

the general knowledge, skills, and experience acquired during

employment to compete with a former employer." *Id*. (citations

omitted).

---

> information includes, but is not limited to
> proprietary technology and technical
> information such as manufacturing or operating
> processes, equipment design, product
> specifications, source code, and business
> information such as selling and pricing
> information and procedures, customer lists,
> business and marketing plans, and financial
> statements.

Compl. Ex. A at 2.

The court concludes from this that Bayco has sufficiently pleaded a plausible claim that it has a protectable trade secret. Defendants are correct in contending at a general level that claims of "know-how," without more, are insufficient to distinguish between "general knowledge, skills, and experience acquired during employment" and protectable confidential information. But Bayco alleges more. It pleads facts that refer to "know-how *with respect to* the design and marketing of the Bayco Wand." Compl. 5 (emphasis added). And elsewhere in the complaint, Bayco specifies that the nature of the "know-how" is information discussed in "high level, confidential strategy meetings" about "packaging, sourcing, pricing, approaches to consumers, and other strategies regarding the Bayco Wand." *Id*. at 4. This is consistent with the definition provided in the Agreement, which broadly contemplates that any valuable, secret information or ideas collected or used to keep Bayco's competitive edge could be considered a "trade secret," including "business information such as selling and pricing information and procedures, customer lists, business and marketing plans, and financial statements." *Id.* Ex. A at 2. Even though the definition in the Agreement does not use the term "know-how," it essentially covers the same subject matter, albeit using different terminology. *Compare* Compl. at 4 ("pricing" and "approaches to consumers") *with id.* Ex. A at 2 ("selling and pricing information" and "business marketing plans").

Moreover, consistent with the Texas Supreme Court's six-factor analysis, Bayco alleges that the marketing, pricing, and design know-how was "sensitive" and shared in "high level, confidential strategy meetings," Compl. at 4, as a part of its general assertion that it has undertaken efforts to "maintain the secrecy of this know-how," *id.* at 5. Although defendants point out that the packaging of the product is apparent to everyone and is designed to be publicly known, it does not follow that the strategic considerations that were discussed regarding packaging, sourcing, pricing, approaches to consumers, and other marketing strategies were similarly known to the public. The complaint also asserts that the information was shared in high-level, confidential strategy meetings, which permits the inference that the information was not known to lower-level Bayco employees or others in the same industry and that Bayco took certain measures to guard the secrecy of the strategic information. Although it is not clear at this point in the litigation how valuable this confidential information may have been to Bayco's competitors, how much it cost Bayco to develop it, or how much it would cost Bayco's competitors to acquire or duplicate it, the nature of the confidential information on which Bayco relies is typically protected as valuable marketing information, and many Texas courts recognize that this type of information is a trade secret. *See, e.g.*, *Tex. Integrated Conveyor Sys.*, 300 S.W.3d at 367 ("Customer lists, pricing information,

client information, customer preferences, buyer contacts, blueprints, market strategies, and drawings have all been recognized as trade secrets."); *Global Water Grp., Inc. v. Atchley*, 244 S.W.3d 924, 928 (Tex. App. 2008, pet. denied); *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex. App. 1998, no pet.); *cf. Grand Time Corp. v. Watch Factory, Inc.*, 2010 WL 92319, at *4 (N.D. Tex. Jan. 6, 2010) (Kinkeade, J.). An analysis of the six factors supports the conclusion that Bayco has plausibly pleaded that the marketing "know-how" on which it relies qualifies as a trade secret under Texas law.

Defendants also maintain that the complaint is too speculative because Bayco does not adequately allege what it is claiming to be its trade secrets. The court disagrees. Bayco has averred more than legal conclusions or formulaic recitations; it has made factual allegations that provide sufficient context to what it means by "know-how." The complaint is adequate to assert that the confidential information on which Bayco is basing its trade secret misappropriation claim qualifies under Texas law as a trade secret.

The court notes, however, that the plainly visible product features described in the complaint, such as the Bayco Wand's rubberized grip, elongated ovalesque casing, and the dual-function task light and spotlight combination, do not qualify as "trade secrets," and that this affects the analysis of the third element of this claim, which the court addresses *infra* at § III(C). *See,*

*e.g., Global Water Grp.*, 244 S.W.3d at 930 (concluding there was no trade secret after noting that competitors could have independently duplicated the alleged trade secret without difficulty). These features are visible to an observer, and there is no suggestion that these publicly available features would be difficult to replicate.

C

The court considers next whether Bayco has plausibly alleged a claim based on defendants' use of a protected trade secret, i.e., whether Bayco has adequately pleaded the third essential element of its trade secret misappropriation claim.

Bayco alleges that Lynch and Designers used Bayco's marketing and design know-how to compete with Bayco in the marketplace, without its permission and knowledge. Bayco avers that Designers "would not have been able to come up with [its lighting wand product] or developed its marketing approach without the detailed assistance of Lynch, using Bayco's trade secrets." Compl. 4. Bayco acknowledges that the fact that Lynch "left Bayco's employ, and went to work with a direct competitor of Bayco" is "not problematic in itself," P. Resp. 4, but it points to "the fact that shortly thereafter Designers came into the same market with essentially a 'knock off' of the Bayco Wand," *id.*, as if the mere connection between Lynch's departure and Designer's introduction of a similar competing product is itself sufficient to plead a plausible claim

that defendants used Bayco's trade secret without authorization.

The allegations of Bayco's complaint fall short of *Iqbal*'s requirement that the factual content must "allow[] the court to draw the reasonable inference that the defendant is liable," *see Iqbal*, 129 S. Ct. at 1949, or *Twombly*'s insistence that the pleaded claim be plausible rather than merely possible, *see Twombly*, 550 U.S. at 556-57. Bayco's factual allegations are akin to those deemed insufficient in *Twombly*, where the Court concluded that the alleged illegal collusive actions could "just as well be independent." *Id.* at 557. The allegation that Designers created a product with features similar to the Bayco Wand does not plead a plausible claim that Lynch or Designers used Bayco's alleged trade secrets (i.e., its "know-how") concerning the design and marketing of the Bayco Wand to create the Designers Wand. The fact that a former employee entered the employment of a competitor does not of itself support a plausible claim that the employee shared proprietary information that enabled the new employer to develop and sell a competing product. The complaint must contain sufficient factual allegations to permit the court to draw the reasonable inference that the former employee actually used the protected trade secret. To be sure, there may be instances in which comparatively little detail need be pleaded, such as when a competing employer who has never produced a particular product begins to do so only after a former employee with extensive

knowledge about the trade secrets that enable such production has entered its employ. But in other, less obvious instances of misuse of trade secrets, more detail is required for the court to conclude that the plaintiff has pleaded a plausible, not merely a possible, claim.

Turning specifically to Bayco's complaint, to the extent it alleges that Lynch or Designers merely copied the outwardly visible features of the Bayco Wand, Bayco has not pleaded a plausible claim. As noted in § III(B), the plainly visible product features of the Bayco Wand described in the complaint are not trade secrets. Therefore, the court cannot draw a reasonable inference, from the similarity of the competitors' products alone, that Lynch used his knowledge of Bayco's trade secrets to assist Designers.

A case on which Bayco relies, *Terra Nova Sciences, LLC v. JOA Oil & Gas Houston, LLC*, 738 F.Supp.2d 689 (S.D. Tex. 2010), is factually distinguishable. In *Terra Nova* the plaintiff asserted that the defendant used certain alleged trade secrets——algorithms and a business plan——by "incorporat[ing] the . . . algorithms into its . . . software, from which it derive[s] profits." *Id*. at 696. Bayco does not allege, however, any use *of the trade secret*; it merely describes facts suggesting the possibility that Designers copied features of the Bayco Wand that are public knowledge. Although Bayco asserts that Designers would not have "developed its marketing approach without the detailed assistance of Lynch,"

Compl. 4, it has not pleaded facts that indicate in what ways the marketing approach is unique to Bayco. Without any factual allegations to indicate that Designers may have used a trade secret known to Lynch——i.e., the confidential marketing approaches, non-obvious design secrets, sourcing and pricing strategy plausibly determined to be trade secrets above——it has failed to plead a plausible claim of trade secret misappropriation.

Accordingly, the court dismisses this claim.

IV

The court turns next to Bayco's claims for breach of contract and tortious interference with contract.

A

To establish a breach of contract under Texas law, Bayco must prove (1) the existence of a valid contract, (2) that Bayco performed its duties under the contract, (3) that Lynch breached the contract, and (4) that Bayco suffered damages as a result of the breach. *E.g., Lewis v. Bank of Am. N.A.*, 343 F.3d 540, 544-45 (5th Cir. 2003) (Texas law). To establish a claim for tortious interference with contract, Bayco must prove "(1) that a contract subject to interference exists; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused damage; and (4) that actual damage or loss occurred." *ACS Investors v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). Of the elements of each claim, defendants

only appear to challenge whether Bayco has adequately pleaded a breach or act of interference.

B

Bayco has not alleged sufficient facts to plead a plausible breach of contract claim. The complaint asserts that Lynch agreed not to use trade secrets outside of scope of his employment with Bayco and alleges that he disclosed Bayco's trade secrets to Designers. Yet as explained in § III(B) and (C), none of the facts alleged plausibly suggests that Lynch disclosed trade secrets to Designers. The court cannot reasonably infer from the similarity of the products alone that Lynch must have breached the Agreement, especially since all of the features that Bayco alleges to be similar between the Bayco Wand and the Designers Wand would be visibly apparent to anyone who sees or buys the product through normal market channels. Because there are no factual allegations to support a reasonable inference that Lynch disclosed the confidential material covered by the Agreement——i.e., "trade secrets" and not "information generally available to the public or properly obtained from an independent source"——Bayco's breach of contract claim falls short of the plausibility pleading standard articulated in *Twombly* and *Iqbal*. *See* Compl. Ex. A at 3 ("Employee agrees not to use or disclose any of the Owner's trade secrets except as necessary to perform its duties for the Owner. These restrictions do not apply to any information generally available to

the public or properly obtained from an independent source.").

The court now considers the tortious interference with contract claim. In support of this claim, Bayco alleges that Designers knew of the Agreement and encouraged Lynch to violate its terms so that Designers could obtain Bayco's trade secrets to compete unfairly with Bayco. Defendants argue that the tortious interference with contract claim is "premised entirely" on the breach of contract claim and fails for the same reasons.

An actual breach of contract is not a required element of a tortious interference with contract claim. *See Tippett v. Hart*, 497 S.W.2d 606, 610 (Tex. Civ. App. 1973, writ ref'd n.r.e.) (citing 86 C.J.S. Torts § 44 in support of position that interfering with performance of contract is actionable interference of contract, regardless whether actual breach is induced); *State Nat'l Bank of El Paso v. Farah Mfg. Co.*, 678 S.W.2d 661, 689 (Tex. App. 1984, writ dism'd by agr.); *Sw. Sec. Inc. v. Sungard Data Sys., Inc.*, 2000 WL 1196338, at *3 (Tex. App. Aug. 23, 2000, pet denied) (not designated for publication). Therefore, Designers' failure to plead a plausible breach of contract claim does not preclude it from pleading a plausible tortious interference with contract claim.

Even so, Bayco has failed to allege sufficient facts to plead a plausible claim that Designers interfered with Bayco's contract

with Lynch (i.e., the Agreement) or that this act of interference was willful and intentional. Bayco does not plead sufficient supporting facts to make a plausible showing that Designers was aware of the Agreement or that Designers induced Lynch to violate the Agreement. As with the claims that the court has already discussed, interference cannot be shown merely by pointing to Lynch's employment relationship with Designers and the similarity in outwardly apparent features between the Bayco Wand and the Designers Wand. The fact that the two products share common features and that a former Bayco employee went to work for Designers at a particular time are not sufficient of themselves to permit a reasonable inference that Designers induced Lynch to breach the Agreement. The court therefore dismisses this claim.

V

The court now considers Bayco's cause of action for trade dress infringement.

A

"The 'trade dress' of a product is essentially its total image and overall appearance." *Blue Bell Bio-Medical v. Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir. 1989). This claim requires a showing that "(1) the dress qualifies for protection, which requires considering functionality, distinctiveness, and secondary meaning; and (2) that the dress has been infringed, which requires considering the likelihood of confusion." *Taco Cabana Int'l, Inc.*

*v. Two Pesos, Inc.*, 932 F.2d 1113, 1117-18 (5th Cir. 1991); *see also* 15 U.S.C. § 1125(a)(3) (permitting civil actions based on trade dress infringement, but placing burden on plaintiff to prove that matter sought to be protected is not functional, if trade dress is not registered).

Bayco describes the NSP-1100 and NSP-1200 series of the Bayco Wand as having the following allegedly distinctive trade dress: an elongated casing, ovalesque in cross-section with a rubberized casing that gives a cushioned feel, and the ability to provide light in two ways——at one end as a spotlight and along the length of the wand through side-facing transparent windows as a task light. It further alleges that the shape and design of the Bayco Wand are not merely functional, and that consumers identify Bayco as the source or origin of the Bayco Wand based on the shape and design features. Bayco alleges that the Designers Wand is sufficiently similar to the Bayco Wand to create a likelihood of confusion as to the affiliation, connection, or association of Designers with Bayco or as to the origin, sponsorship, or approval of Designers or Designers goods by Bayco. Defendants maintain that Bayco's trade dress is generic and functional, and they posit that Bayco has given no indication that potential Bayco Wand consumers recognize the alleged trade dress as source-identifying.

B

To determine whether Bayco's alleged trade dress is protectable, the court looks for distinctiveness and secondary meaning as a source identifier, under *Taco Cabana*. Purely functional product features do not qualify for trade dress protection. "[A] product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of an article." *See Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir. 2002) (quoting *Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32 (2001) (internal quotation marks omitted)). A secondary test also recognized in *Traffix*, called the "competitive necessity" test, states that "a functional feature is one the 'exclusive use of which would put competitors at a significant non-reputation-related disadvantage.'" *Traffix*, 532 U.S. at 32 (alteration omitted) (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995)).

Bayco's trade dress infringement claim fails because it has failed to plead sufficient facts to make a plausible showing that the features alleged to constitute its trade dress are non-functional and protectable. As defendants point out, and as Bayco acknowledges in its complaint and the promotional literature attached as exhibits to the complaint, features such as the rubberized cushioned grip, the elongated ovalesque casing, and the

transparent windows that allow front and side lights are functional. Bayco concedes that the rubberized grip serves the function of giving a "cushioned" feel for the user, Compl. 2, and the cushioned feel is advertised as a functional feature in each of the product descriptions submitted in Exhibit B, *see, e.g.*, *id.* Ex. B at 2 ("Black soft-touch finish with non-slip diamond pattern grip"); *id.* at 3-5 ("Soft-touch finish"). Bayco's promotional materials advertise the elongated ovalesque casing as a comfort and portability feature. *See, e.g.*, *id.* Ex. B at 1 ("The thin profile and oval shape fits the size of any hand."); *id.* at 2-5 ("Their extremely thin, oval shape allows the light to easily fit in a pocket, behind a belt or in anyone's hand."). And the front and side transparent windows are an essential part of what provides, in Bayco's own words, "dual functionality, that is, capable of providing light, both forward, as a spotlight, and also along the length of the wand." *Id.* at 2; Ex. B at 1-5 (advertising "Flashlight * Floodlight * Dual-Light" "capability" or "functionality" for each of its products, and explaining that the flashlight provides "long reach visibility" while the wide-beam floodlight "drench[es] the work area in light"). Each of these features affects the quality of the Bayco Wand and provides a capability that Bayco anticipates will be useful to the targeted consumer. A competitor who is barred from offering this combination of features would suffer a non-reputation-related

disadvantage in selling its product.

Bayco argues that it has attached photos of its trade dress as Exhibit B to the complaint and has alleged that the trade dress consists of "shape and design," specifying the particular shape and design elements it deems distinctive, as did the plaintiffs in *Innovation Ventures, LLC v. N2G Distributing, Inc.*, 635 F.Supp.2d 632, 640-41 (E.D. Mich. 2008). *See* P. Resp. 5; Compl. 6. But the mere fact that Bayco has attached photos of its trade dress does not aid Bayco. This is because, unlike in *Innovation Ventures*, where the court found the photographs sufficient to withstand a challenge based on *lack of specificity*, Bayco's deficiency lies not in its lack of specificity, but in the functional aspects of the particular design and shape features it alleges to be distinctive. The fact that the complaint is augmented by a visual depiction of the functional features alleged does not make those features any less functional.

Bayco also argues in the alternative that, even if the individual features of a product are deemed functional, the functional features may be presented together in such an arbitrary fashion that the combined configuration *per se* can be protected as non-functional, even if the individual components cannot. *See Taco Cabana*, 932 F.2d at 1119. Also, as noted in *Taco Cabana*, citing *Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 425 (5th Cir. 1984), a design may be distinctive and identifying even though the

- 21 -

form that embodies the design incidentally may serve a useful purpose.[4] But Bayco has not alleged sufficient facts to plausibly support this theory of distinctiveness. Aside from the particular features described above, which the court has deemed functional, the complaint does not identify what overall combination or design or shape configuration it asserts to be arbitrary. Bayco alleges that Designers has used in commerce "words, packaging, and devices" likely to cause confusion, *see* Compl. 7, but does not plead specifically what words, packaging features, and devices it considers protected as its overall trade dress image. Therefore, based on solely the design elements identified in the complaint as trade dress, the court must reject Bayco's contention that the sum of its functional parts may combine to form an arbitrary total image or overall appearance.

Although the inquiry into product functionality can be "fact-intensive," *Loops, LLC v. Amercare Products, Inc.*, 63 F.Supp.2d 1128, 1136 (W.D. Wash. 2008), the court must determine at the Rule 12(b)(6) stage whether Bayco has pleaded a plausible claim under the standard of *Iqbal*, 129 S. Ct. at 1950. There may be circumstances, of course, in which the necessity to make a fact-intensive evaluation precludes the pretrial entry of judgment as a

---

[4]To illustrate, a soft-drink company might choose to package its product in a distinctive bottle shape that consumers recognize as a symbol for the soft drink, and that *shape* would be distinctive, even if the bottle that embodies the shape has an incidental functional purpose of containing liquid.

matter of law.  But *Iqbal* specifically permits the "reviewing court
to draw on its judicial experience" and take into account the
factual context presented in the pleadings, even though
"[d]etermining whether a complaint states a plausible claim for
relief will . . . be a context-specific task."  *Id*. at 1950, 1954.
Therefore, considering the averments of the complaint (including
the language that Bayco uses to describe its own trade dress) and
the attached promotional literature, the court concludes that Bayco
has not pleaded a plausible claim that its trade dress is non-
functional and protectable.  *See* 15 U.S.C. § 1125(a)(3) (placing
burden of proof on person asserting protection for non-registered
trade dress to prove non-functionality).

Accordingly, the court dismisses Bayco's trade dress
infringement claim.

VI

Finally, the court turns to Bayco's common law unfair
competition claim.

Because this case is at the Rule 12(b)(6) stage, the issue has
not been well briefed, and the court is permitting Bayco to
replead, it will not address the dispute in the briefing over the
elements of a common-law unfair competition claim.  The court will
assume *arguendo* if necessary that Texas would recognize the

misappropriation theory of liability for unfair competition,[5] which is the theory for which Bayco contends. Having made that assumption, the court still concludes that Bayco has failed to state a claim on which relief can be granted because the claim is preempted.

Federal patent law preempts state law to the extent state law is used to protect functional aspects of a product; state misappropriation claims can only go as far as to protect non-functional aspects of a product. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 151-52 (1989) (explaining that federal patent laws must determine not only what is protected, but what is free for all to use, and reconfirming decisions making clear that state regulation of intellectual property must yield where it clashes with the balance struck by Congress via the federal patent system); *Astoria Indus. of Iowa, Inc. v. Brand FX Body Co.*, 2010 WL 1433404, at *8 (Tex. App. Apr. 8, 2010, pet. denied) (mem. op.) (noting that state unfair competition laws are not preempted *unless* they conflict with federal patent law by

<hr/>

[5]As noted in *United States Sporting Products, Inc. v. Johnny Stewart Game Calls*, 865 S.W.2d 214 (Tex. App. 1993, writ denied), the unfair competition by "misappropriation" cause of action is different from "misappropriation of trade secrets" or the "trademark infringement" variety of unfair competition. *See id.* at 217-18 (disputing federal court's statement that Texas courts have not expressly embraced a cause of action for misappropriation with the assertion that Texas courts have recognized the misappropriation theory since 1925, and distinguishing between the various types of "misappropriation" causes of action).

- 24 -

protecting "functional aspects" of a product).

As the court has already explained, Bayco has failed to plead a plausible claim that the aspects of the Bayco Wand that Bayco seeks to protect are non-functional. Unless and until it does, its common law unfair competition claim is preempted by federal patent law. Accordingly, this claim is dismissed.

## VII

Although the court is granting defendants' motion to dismiss, it will permit Bayco to replead. Courts often grant a plaintiff one opportunity to replead, unless it appears that the plaintiff cannot cure the initial deficiencies in the pleading. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (internal quotation marks and citation omitted)). Because there is no indication that Bayco cannot, or is unwilling to, cure the defects that the court has identified, the court grants Bayco 30 days from the date this memorandum opinion and order is filed to file an amended complaint.

* * *

For the reasons explained, the court grants defendants' motion to dismiss. Bayco may file an amended complaint within 30 days of the date this memorandum opinion and order is filed.

**SO ORDERED.**

April 28, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE